711 S.E.2d 595

**Jonathan DARBY, Respondent Below, Petitioner**

v.

**KANAWHA COUNTY BOARD OF EDUCATION, Petitioner Below, Respondent.**

**No. 101219.**

Supreme Court of Appeals of West Virginia.

Submitted May 11, 2011.

Decided June 14, 2011.

---

John Everett Roush, Esq., Legal Services, West Virginia School Service Personnel Association, Charleston, WV, for Petitioner.

James W. Withrow, Esq., Kanawha County Board of Education Office of Counsel, Charleston, WV, for Respondent.

PER CURIAM.

Jonathan Darby, the petitioner, appeals the April 20, 2010 order of the Circuit Court of Kanawha County that reversed the April 9, 2009 decision of the hearing examiner of the West Virginia Public Employees Grievance Board and upheld Mr. Darby's employment termination with respondent Kanawha County Board of Education. After careful consideration of the pleadings and the record in this case, this Court reverses the circuit court's order and we reinstate the decision of the hearing examiner.

## I.

### FACTS

Jonathan Darby, the petitioner, was employed by the respondent Kanawha County Board of Education (hereinafter "BOE") as a school bus driver. During the 2007–2008 school year, Mr. Darby's bus route served Herbert Hoover High School. In the Spring of 2008, A.J.,[1] a 17–year–old female student at Hoover, began riding Mr. Darby's bus.

A.J. acquired Mr. Darby's cell phone number and began contacting him frequently. The two participated in a number of lengthy telephone calls. According to Mr. Darby, he talked with A.J. in an attempt to help her deal with family and personal problems. Also, he did not feel as if he could refer her to an adult in her family, given her family history. The contact between Mr. Darby and A.J. ended sometime in or before early May, 2008, when A.J. and her boyfriend reconciled.

In June 2008, a parent whose daughter rode Mr. Darby's bus, complained to the Director of Pupil Transportation that Mr. Darby was having an inappropriate relationship with A.J. The BOE investigated the matter, and by letter dated December 2, 2008, notified Mr. Darby that his employment with the BOE had been terminated.[2] The termination was the result of the BOE's conclusion that Mr. Darby violated the BOE's sexual harassment policy by having a sexual relationship with A.J.[3]

Mr. Darby appealed his termination. At the Level III evidentiary hearing before the West Virginia Public Employees Grievance Board, several witnesses testified. Marcie Webb, a parent whose daughter was friends with A.J. testified as to information she received from her daughter and A.J.'s stepmother, Melissa J. Melissa J. testified that A.J. asked her whether it was appropriate for one of A.J.'s friends to date a twenty-one year old, to which Melissa J. replied that it was not. After this conversation, A.J. moved out of Melissa J.'s house and began to stay with a friend. Melissa J. also testified that she discovered on her cell phone bill numerous conversations between A.J. and Mr. Darby. Melissa J. further indicated that she discovered unsigned notes[4] in A.J.'s wallet

---

1. As is our custom in sensitive matters, we identify a juvenile by initials only. *See Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. The BOE reported the matter to the West Virginia State Police. The State Police, after taking a statement from A.J., referred the case to the county prosecutor who declined to prosecute the case.

3. According to the hearing examiner in her April 9, 2009 order, the authority of a county board of education to suspend an employee must be based upon one or more of the causes listed in W.

Va.Code § 18A–2–8 (2007), which provides in pertinent part:

> (a) Notwithstanding any other provisions of law, a board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance, willful neglect of duty, unsatisfactory performance, the conviction of a felony or a guilty plea or a plea of nolo contendere to a felony charge.

4. According to the hearing examiner, these notes were not presented as evidence at the evidentiary hearing. The hearing examiner also found that there was no evidence, testimonial or documen-

from someone discussing a bus wreck and saying that he was going to leave his wife. Because of the reference to the bus wreck, Melissa J. presumed that Mr. Darby wrote the notes. Alice Thomas, a clerk at Herbert Hoover High School, testified that she witnessed Mr. Darby and A.J. talking several times in the school's commons area and on one occasion she saw them talking on Mr. Darby's bus. Sally Shaffer, at whose home A.J. stayed for awhile, testified that she saw a silver truck with a picture across the back glass in her driveway while A.J. was staying with her. She indicated that A.J. told her it was Mr. Darby's truck. Mr. Darby denied this, and testified that his truck was dark gray, almost black, and could never be mistaken for silver. A.J. testified that she and Mr. Darby had one sexual encounter. Mr. Darby, in his testimony, denied a sexual relationship.[5] He acknowledged, however, that he and A.J. were friends and that they had long phone conversations.[6]

In her April 9, 2009 decision, the hearing examiner noted the inconsistent nature of A.J.'s testimony. Also, the hearing examiner found that A.J. was unable to provide specific information as to when the purported sexual encounter occurred. After a detailed and thorough discussion of the witnesses' testimony and her assessments of the credibility of each witness's testimony, the hearing examiner concluded:

> The evidence clearly establishes there was a friendship between Grievant and A.J. Unfortunately, whether it involved an inappropriate sexual relationship cannot be *definitively* discerned based on the testimony of the witnesses. The grievance

board has previously held, [w]here a definitive credibility determination cannot reliably be made from the evidence related to material facts in a disciplinary hearing, the employer cannot meet its burden of proof. Respondent has failed to meet its burden of proof in this matter. (Citation and quotation marks omitted; italics added).

Accordingly, the hearing examiner ordered the BOE to reinstate Mr. Darby to his previous position and to compensate him for lost wages and benefits to which he would have been entitled had he remained in the position, with legal interest on any back pay.

The BOE subsequently appealed the hearing examiner's decision to the Circuit Court of Kanawha County. On appeal, the BOE asserted that the hearing examiner used an incorrect burden of proof in determining the weight of the evidence, made incorrect credibility findings, and did not consider evidence which was introduced by the BOE. In its April 20, 2010 order, the circuit court reversed the hearing examiner's decision and reinstated the termination of Mr. Darby's employment. The circuit court first indicated that the burden below was on the BOE to prove by a preponderance of the evidence that the action taken was justified. The circuit court then determined that the hearing examiner held the BOE to the wrong burden of proof. Specifically, the circuit court reasoned:

> A preponderance of the evidence is defined as "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more

tary, to confirm a bus accident during that time period.

**5.** The hearing examiner found little consistency in A.J.'s prior statements but found that Mr. Darby's denials remained consistent.

**6.** This summary of the evidence is taken from the hearing examiner's decision. A transcript of the Level III evidentiary hearing was not part of the record received by this Court. In its response, the BOE states with regard to the hearing examiner's findings of fact,

> So far as these findings go, they are generally accurate. However, there are many facts

that the ALJ neglected to recite, including the fact that [Mr. Darby] had numerous and lengthy telephone conversations with the student, the student maintained a diary of her feelings for and interactions with [Mr. Darby] and the student testified that she had sexual relations with [Mr. Darby] on one occasion. The BOE's statement that the hearing examiner did not refer in her order to the numerous and lengthy phone calls between A.J. and Mr. Darby is inaccurate. The hearing examiner specifically found that "[t]he two [A.J. and Mr. Darby] participated in a number of lengthy telephone calls." Also, the hearing examiner referred to A.J.'s testimony of a sexual encounter with Mr. Darby in the discussion portion of her decision.

probable than not." BLACK'S LAW DICTIONARY (6th ed.1991).

Here, the ALJ ruled that "[w]here a definitive credibility determination cannot reliably be made from the evidence related to material facts in a disciplinary hearing, the employer cannot meet its burden of proof." The ALJ's decision also stated that "[t]he evidence clearly establishes there was a friendship between Grievant and A.J. Unfortunately, whether it involved an inappropriate sexual relationship cannot be definitively discerned based on the testimony of the witnesses." This is a more stringent standard of proof than the preponderance of evidence standard required. Because the ALJ used the wrong standard in deciding this case, this Court reverses her Decision allowing Darby to return to work as a school bus driver.

Either as a result of its finding above or as an apparent additional reason for reversing the hearing examiner's decision, the circuit court summarily concluded that "[a]lthough an ALJ is charged with assessing the credibility of the witnesses, this Court finds in light of the reliable, probative, and substantial evidence on the whole record, the ALJ was clearly wrong in determining that the [BOE] failed to prove its allegations against Darby by a preponderance of evidence standard." Mr. Darby now appeals the circuit court's order.

## II.

## STANDARD OF REVIEW

 "This Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the ALJ." *Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995). Pursuant to this standard,

(b) A party may appeal the decision of the administrative law judge on the grounds that the decision:

(1) Is contrary to law or a lawfully adopted rule or written policy of the employer;

(2) Exceeds the administrative law judge's statutory authority;

(3) Is the result of fraud or deceit;

(4) Is clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va.Code § 6C–2–5 (2007), in part. We have further explained,

We must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts. Further, the ALJ's credibility determinations are binding unless patently without basis in the record. Nonetheless, this Court must determine whether the ALJ's findings were reasoned, *i.e.,* whether he or she considered the relevant factors and explained the facts and policy concerns on which he or she relied, and whether those facts have some basis in the record. We review *de novo* the conclusions of law and application of law to the facts.

*Martin,* 195 W.Va. at 304, 465 S.E.2d at 406. Further, this Court has held that

Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Syllabus Point 1, *Cahill v. Mercer County Bd. of Educ.,* 208 W.Va. 177, 539 S.E.2d 437 (2000). Finally, we have indicated that "[a] final order of the hearing examiner for the West Virginia [Public] Employees Grievance Board, made pursuant to W. Va.Code, [6C–2–1], *et seq.* [ ],[7] and based upon findings of

---

7. This syllabus point originally referenced W. Va.Code, 18–29–1, *et seq.* (1985). However, effective March 7, 2007, the provisions of Chapter 18, Article 29 were repealed, and these provi-

fact, should not be reversed unless clearly wrong." Syllabus Point 1, *Randolph County Bd. of Educ. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989) (footnote added). With these standards to guide us, we now consider the issues raised by Mr. Darby.

## III.

## DISCUSSION

■ Mr. Darby first assigns as error the circuit court's finding that the hearing examiner applied the wrong burden of proof. The circuit court found that the hearing examiner's use of the word "definitive" or "definitively" indicated that she held the Board of Education to a more stringent burden of proof than a preponderance of the evidence. Mr. Darby argues that the hearing examiner's use of the word "definitively" or "definitive" simply indicated a paraphrase of the formula for preponderance of the evidence. Mr. Darby explains that the hearing examiner essentially found that conflicting evidence was presented on the issue of whether a sexual relationship existed between A.J. and Mr. Darby. As a consequence, the hearing examiner was obligated to make a judgment as to the credibility of the evidence in order to determine which evidence was more persuasive. In weighing the evidence, the hearing examiner determined that the evidence in support of the existence of a sexual relationship was not more credible than the evidence contradicting the existence of such a relationship. Accordingly, the hearing examiner concluded that the BOE failed to meet its burden of proof. This Court agrees with Mr. Darby.

After reading the hearing examiner's entire order, it is clear to this Court that the hearing examiner used the proper burden of proof in weighing the evidence. In her order, the hearing examiner began her discussion by setting forth the proper burden of proof as follows:

In disciplinary matters, the employer bears the burden of establishing the charges by a preponderance of the evidence. A preponderance of the evidence is

defined as "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not." Where the evidence equally supports both sides, a party has not met its burden of proof. (Citations omitted.)

In the "Conclusions of Law" portion of her decision, the hearing examiner reiterated the proper burden of proof. While the hearing examiner's use of the word "definitively" or "definitive" may have been misleading, this Court is convinced that the hearing examiner simply meant that the evidence equally supported both sides, and, as a result, the BOE did not meet its burden of proof. Therefore, we find the circuit court's determination that the hearing examiner applied an improper burden of proof to be error.

■ Second, Mr. Darby argues that the circuit court erred in reversing the hearing examiner's decision on factual issues without explaining the basis and rationale for its ruling. Mr. Darby contends that under the proper standard of review, the circuit court should have upheld the hearing examiner's credibility determinations unless there was no basis for those determinations in the record. Here, however, the circuit court simply summarily substituted its credibility determinations for those of the hearing examiner. Again, this Court agrees with Mr. Darby.

As mentioned above, the circuit court summarily concluded, absent any supporting facts or analysis, that "in light of the reliable, probative, and substantial evidence on the whole record, the ALJ was clearly wrong in determining that the [BOE] failed to prove its allegations." Cases such as these involve difficult issues and must be determined based upon proof, not allegation and supposition. The hearing examiner herein was tasked with considering the possible inappropriate conduct by a school employee toward a 17–year–old student. This job was no easy one, especially where, as here, the evidence

---

sions were recodified at Chapter 6C, Article 2. The grievance in the instant case was brought pursuant to the recodified provisions. Therefore,

we have modified the applicable syllabus point to reflect the recodification.

adduced in the hearing below was conflicting. A.J. testified that she had a sexual encounter with Mr. Darby. Mr. Darby earnestly denied this. Consequently, in order to properly weigh the evidence, the hearing examiner necessarily had to consider all of the evidence presented and to weigh the credibility of each of the witnesses. In her order, the hearing examiner listed the relevant factors she considered in assessing witness credibility and applied these factors to each witness. The hearing examiner also explained the facts and concerns on which she relied, and the evidence supporting her decision. While the circuit court found clear error in the hearing examiner's decision, the circuit court failed to support its finding with any facts or analysis whatsoever. This Court finds that, unlike the circuit court's conclusory findings, the hearing examiner's decision was carefully considered and documented, thorough in its findings, and reasoned in its conclusions in view of the evidence presented by the parties. Furthermore, the hearing examiner's credibility determinations are not without basis in the record. For this reason, this Court is compelled to conclude that the circuit court improperly exceeded its scope of review, failed to give proper deference to the hearing examiner's factual findings, and wrongly substituted its own judgment on the credibility of the witnesses for that of the hearing examiner.

## IV.

### CONCLUSION

For the reasons stated above, this Court reverses the April 20, 2010 order of the Circuit Court of Kanawha County and we reinstate the April 9, 2009 decision of the West Virginia Public Employees Grievance Board.

Reversed.

Chief Justice WORKMAN, deeming herself disqualified, did not participate in the decision of this case.